UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

*1-4-16*

ADRIAN BUSBY,                                    :
                                                :
                              Movant,           :        1:13-cv-04899 (ALC)
                                                :
              -against-                         :        **OPINION AND ORDER**
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
                              Respondent.       :
                                                :
--------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Adrian Busby, proceeding pro se, petitions this Court to correct, vacate, or set aside his

conviction pursuant to 28 U.S.C. § 2255. Busby challenges his conviction on seven grounds,

alleging: (1) the Government withheld certain pieces of evidence; (2) the Government tampered

with witnesses; (3) his Fifth Amendment right against self-incrimination was violated; (4) the

prosecution was selective; (5) the Government knowingly presented false testimony; (6) defense

counsel was ineffective; and (7) Busby was entitled to qualified immunity. For the reasons

explained herein, Busby's motion is denied.

## BACKGROUND

On November 1, 2011, a jury convicted Busby, a former special agent with the Federal

Bureau of Investigations ("FBI"), of four counts of making false statements in violation of

18 U.S.C. § 1001. These charges stemmed from statements Busby made in internal FBI

documents and to the U.S. Attorney's Office for the Southern District of New York ("USAO")

and the United States Department of Justice's Office of the Inspector General ("OIG") regarding

a confidential informant with whom Busby had developed an intimate relationship (the

"confidential informant"). Following Busby's conviction, the District Court sentenced Busby to

**COPIES MAILED**

a term of imprisonment of 12 months and one day, to be followed by a term of one year of supervised release, on each count.[1] The sentences were to run concurrently.

On April 28, 2012, Busby filed a notice to appeal through counsel. On appeal, he argued that: (1) the District Court committed plain error by not holding a hearing on an allegation of selective prosecution; (2) the District Court abused its discretion by allowing the government to introduce the testimony of a co-defendant of the confidential informant with whom Busby had a relationship; and (3) the District Court committed plain error by permitting the prosecutor to make unobjected-to statements during closing regarding Busby's efforts to intervene in the state prosecutions of the confidential informant. United States v. Busby, 524 F. App'x 744, 745 (2d Cir. 2013). On May 13, 2013, the Second Circuit affirmed the conviction, rejecting each of Busby's three arguments. Id.

Busby filed the instant motion on July 11, 2013. (13-cv-4899, ECF No. 1).[2] The motion was timely filed, as it was filed within the "1-year period of limitation" that begins to run "from the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1)(f). At the time Busby filed his motion, he was still under supervised release, thus satisfying the jurisdictional requirement that a person be "in custody under sentence of court." See Scanio v. U.S., 37 F.3d 858, 860 (2d Cir. 1994) ("[T]he habeas corpus statute confers jurisdiction to district courts to entertain habeas petitions . . . solely from persons who satisfy the status . . . of being 'in custody' at the time the petition is filed, and a petitioner under supervised release may be considered 'in custody.'").

---

[1] Judge Harold Baer presided over Busby's trial. The case was later reassigned to this judge.
[2] Some documents related to this Motion are docketed under the criminal cause number (11-cr-0370) and others are docketed under the civil cause number (13-cv-4899). Citations to the docket are distinguished here by cause number. In addition, Busby's Motion includes both a form motion, filled out by hand and paginated 1 to 14, and a supplemental explanation of the grounds for relief, typewritten and paginated 1 to 21. For ease of reference, the handwritten form motion is referred to as "Mot." and the typed supplemental explanation is referred to as "Supp. Grounds."

## LEGAL STANDARD

### A. 28 U.S.C. § 2255

Section 2255 allows a person convicted in federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . ." 28 U.S.C. § 2255(a). Under § 2255, a court may grant relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted).

When considering a § 2255 motion, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." Id. at 131. If it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas petitioner is not entitled to relief, "the judge must

3

dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts,

Rule 4(b), 28 U.S.C. foll. § 2255.

Finally, in ruling on a § 2255 motion, the Court construes a pro se petitioner's

submissions liberally and interprets them "to raise the strongest arguments that they suggest."

Fulton v. Goord, 591 F.3d 37, 43 (2d. Cir. 2009) (quoting Green v. United States, 280 F.3d 78,

83 (2d Cir. 2001) (internal quotation marks omitted).

**B.  Procedural Bars**

"In general, a defendant is barred from collaterally challenging a conviction under

§ 2255 on a ground that he failed to raise on direct appeal." United States v. Thorn, 659 F.3d

227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause

for the procedural default and ensuing prejudice or (2) actual innocence." Id. However, the

procedural default bar "does not generally apply to claims of ineffective assistance of counsel."

Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).

To show "cause," the movant must show that "some objective factor external to the

defense impeded counsel's efforts to comply with the . . . procedural rule." Murray v. Carrier,

477 U.S. 478, 488 (1986). "Negligence on the part of a prisoner's postconviction attorney does

not qualify as 'cause' . . . because the attorney is the prisoner's agent, and under 'well-settled

principles of agency law,' the principal bears the risk of negligent conduct on the part of his

agent." Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (quoting Coleman v. Thompson, 501 U.S.

722, 753-754 (1991)). But "[i]neffective assistance of appellate counsel may constitute cause for

a procedural default." Xiang v. United States, No. 09 Civ. 7579 (AKH), 2010 WL 3155052, at

*4 (S.D.N.Y. Aug. 6, 2010) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)). To prevail

on such a claim, the movant "must show, first, that appellate counsel committed errors so serious

4

as to be objectively unreasonable and, second, that the result of the proceeding would likely have been different in the absence of counsel's errors." Id. (citing Wiggins v. Smith, 539 U.S. 510, 520-521 (2003); Strickland v. Washington, 466 U.S. 668 (1984)). As in all ineffective assistance of counsel claims, the movant must overcome a strong presumption that counsel exercised reasonable professional judgment: "Appellate counsel does not have a duty to raise all colorable claims on appeal; rather, counsel should use reasonable discretion to determine which claims constitute a defendant's best arguments for obtaining a reversal of a conviction." Forte v. LaClair, 354 F. App'x 567, 569 (2d Cir. 2009).

Together with showing cause for a default, the movant must show prejudice from it. To make this showing, he must establish that he suffered "actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A showing that the errors created a "possibility of prejudice" is not enough; the movant must show that the errors "worked to his actual and substantial disadvantage." Id. at 170 (emphasis in original).

In the alternative, a court may grant a § 2255 motion despite procedural default if the movant can show that he is "actually innocent." Carrier, 477 U.S. at 496. "To establish actual innocence, the defendant must demonstrate that 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." Bousley v. U.S., 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). Under this standard, "'actual innocence' means factual innocence, not mere legal insufficiency." Id.

In addition to the procedural bar on claims *not* raised on direct appeal, "a section 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" Reese v. United States, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001); see also United States v. Natelli, 553 F.2d 5, 7 (2d Cir.

5

1977) (per curiam) ("[O]nce a matter has been decided adversely to a defendant on direct appeal

it cannot be relitigated in a collateral attack under section 2255"). "If [the movant] thus raises an

issue that was dealt with on direct appeal, he will be procedurally barred from proceeding with

the challenge." Sanin, 252 F.3d at 83.

## C. Ineffective Assistance of Counsel

As discussed above, the procedural default bar does not apply to ineffective assistance of

counsel claims. In order to prevail on an ineffective assistance of counsel claim, the movant must

demonstrate that (1) his counsel's performance "fell below an objective standard of

reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 688-

694 (1984). "At the second step of analysis, a petitioner cannot show prejudice if the claim or

objection that an attorney failed to pursue lacks merit." Harrington v. United States, 689 F.3d

124, 130 (2d Cir. 2012). Counsel is granted "wide latitude" and there is a "strong presumption

that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at

689. As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great

majority of habeas petitions that allege constitutionally ineffective counsel founder on that

standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

## DISCUSSION

### A. Procedurally Defaulted Claims

Save for his ineffective assistance of counsel claim and his selective prosecution claims,

Busby is barred from bringing all of his claims because he could have brought these claims on

direct appeal and he did not. Busby raises five procedurally barred claims: (1) the Government

withheld certain pieces of evidence; (2) the Government tampered with witnesses; (3) his Fifth

Amendment right against self-incrimination was violated; (4) the prosecution knowingly presented false testimony; and (5) he was entitled to qualified immunity. (Mot. 5-9; Supp. Grounds 1).

As Busby acknowledges, his appellate counsel did not raise these issues on direct appeal. (Mot. 3, 6, 7, 9). He does not establish cause for the defaults.  He nowhere points to an "objective factor external to the defense" that impeded counsel's efforts to raise these claims. Carrier, 477 U.S. at 488. As to the first three claims, he attributes the defaults to choices made by his appellate lawyer. (Mot. 5, 7, 9).[3] As to the latter two claims, he does not offer explanations, except to note that his trial counsel did not raise these issues. (See, e.g., Supp. Grounds 6, 8, 16). The explanations he does offer, however, make clear that any omission of the claims on direct appeal was due to internal defense decision-making, rather than any external factor.

Busby also does not establish that his appellate counsel was ineffective for failing to raise these claims. See Xiang, 2010 WL 3155052, at *4. He does not argue appellate counsel's ineffectiveness anywhere, but had he done so, such arguments would be unavailing. His appellate attorney's decision not to raise these claims fell within "the wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. 668, 689 (1984). Appellate counsel had no duty to raise all colorable claims—let alone claims she did not, in her reasonable discretion, think colorable. Forte, 354 F. App'x at 569. Deference must be given to "counsel's informed decisions, [and her] strategic choices must be respected in these circumstances if they are based on professional judgment." Strickland, 466 U.S. 668. The claims here are claims trial counsel did not raise at trial. Under Rule 52(b), the appellate court's review of the claims not raised at trial is

---

[3] As to his claim that the Government withheld evidence, Busby explains, "The appellant attorney advised she could not appeal any issues not raised during the trial." (Mot. 5). As to his claim of witness tampering, he explains, "Attorney handling the appeal advised it was not raised at trial." (Mot. 7). As to his Fifth Amendment claim, he explains, "The issue was not raised at trial and so was not able to be included in the appeal." (Mot. 9).

limited to "plain error that affects substantial rights." Fed. R. Crim. P. 52(b). This is a high bar, and appellate counsel could reasonably have determined that Busby's claims would not survive it and that Busby would be better served if she directed the appellate court's attention to claims with a better chance of success.

Because Busby does not show cause for his failure to raise these five claims on direct appeal—nor does he anywhere argue that he can meet the high standard for actual innocence set under Schlup, 513 U.S. 327—the Court cannot consider these claims.

**B. Selective Prosecution**

Similarly, the Court may not consider Busby's selective prosecution claim, as the Second Circuit already considered and denied it. While some of Busby's selective prosecution claim appears actually to be a claim that his trial counsel was ineffective (Mot. 9-10), he separately asserts that the FBI's investigation and the subsequent prosecution were racially motivated. (Supp. Grounds 18-19). Busby claims, "33% of all Black Agents in the 4% FBI underrepresented work pool were historically prosecuted for similar acts over the last 5 years, as opposed to White Agents who were disciplined administratively per USAO reports." (Supp. Grounds 19).

On direct appeal, Busby argued that the district court committed plain error by not holding a hearing on the issue of selective prosecution. (App. Brief 20-21). After the verdict, the District Court *sua sponte* directed the prosecution to provide it with a chart showing the number of black and white FBI agents indicted and convicted for filing false statements over a 10-year period. (T.T. 611). Upon reviewing the chart, the District Court declined to hold a hearing or otherwise take action. (Sentencing Hr'g 8-10). The Second Circuit held that the District Court did not err in declining to hold a hearing, "as the record does not contain evidence constituting a

8

*prima facie* case that Busby was selected for prosecution because of his race." <u>United States v. Busby</u>, 524 F. App'x 744, 745 (2d Cir. 2013).

Busby raises the same claim here that he did on direct appeal, presenting the same statistical evidence that the District Court reviewed and that was raised on direct appeal, and arguing that it establishes a *prima facie* case of discrimination.[4] (Supp. Grounds 18). His arguments on direct appeal and in his § 2255 motion are premised on the same facts and rest on the same legal ground. <u>See</u> <u>U.S. v. Pitcher</u>, 559 F.3d 120, 123-124 (2d Cir. 2009) (quoting <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963)) ("[I]dentical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, or be couched in different language, or vary in immaterial respects."). This Court therefore is barred from considering Busby's discriminatory prosecution claim on its merits.

## C. Ineffective Assistance of Counsel

Finally, Busby raises an ineffective assistance of counsel claim, alleging a long list of deficiencies on the part of trial counsel. The alleged deficiencies include counsel's failure to: preclude the testimony of the defense lawyer of the confidential informant's co-defendant and of a Queens assistant district attorney ("ADA Wright"); move for dismissal based on ADA Wright's testimony and on the grounds that Busby had qualified immunity; object to the Government's cross-examination of Busby; object and move for dismissal after the prosecution implied during summation that Busby had threatened individuals; properly cross-examine the defense attorney of the confidential informant; speak to and call certain witnesses Busby requested; raise the selective prosecution issue; and move to suppress an internal FBI report that

---

[4] Busby argues that the evidence meets the "circumstantial elements of the 'McDonnell-Douglas Test.'" The Court takes this as an argument that Busby established a prima facie case of discrimination, which in the employment discrimination context, is addressed at step one of the <u>McDonnell-Douglas</u> framework. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

formed the basis for one count of the indictment. (Mot. 9; Supp. Grounds 6-7, 10, 12, 14, 15, 16). None of these deficiencies meet the stringent definition of ineffective assistance set out in Strickland.

At the outset, several of Busby's ineffective assistance of counsel claims are barred, as "a habeas petitioner is barred from presenting an ineffective assistance counsel claim on collateral review that is simply a slightly altered rearticulation of a claim that was rejected on direct appeal." Beras v. United States, No. 05 Civ. 2678 (SAS), 2013 WL 1155415, at *13 (S.D.N.Y. Mar. 20, 2013) (quoting Riascos-Prado v. United States, 66 F.3d 30, 34 (2d. Cir. 1995) (internal quotation marks and alteration marks omitted). "This result makes logical sense: a claim that was raised and rejected on the merits is meritless, and an attorney's failure to make a meritless argument does not amount to ineffective assistance." Id. (quoting United States v. Noble, 363 Fed. App'x 771, 773 (2d Cir. 2010) (quoting United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)) (internal quotation marks omitted). Busby's claims that counsel should have moved for dismissal on the ground of selective prosecution and that counsel should have objected to the prosecution's summation both must be denied, as the Second Circuit already rejected these arguments on the merits during direct appeal. See Busby, 524 F. App'x at 744-745.

Others of Busby's claims likewise must be denied because he "cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." Harrington, 689 F.3d at 130. As to the claim related to qualified immunity, Busby seems to be referring to the long-standing principle that federal officers may not be held criminally liable under state law for actions undertaken in the scope of their federal employment. See In re Neagle, 135 U.S. 1 (1890). However, that principle is inapplicable because Busby was charged under federal law. Therefore, it would have been futile for his counsel to raise that point. An attempt to preclude the testimony

10

of ADA Wright on the grounds that she was biased against Busby would have been similarly ill-fated. That a witness is biased against a defendant is not in and of itself a basis for preclusion; instead, it is an area for cross-examination. See United States v. Figueroa, 548 F.3d 222, 227 (2d Cir. 2008) (quoting Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir. 1994)) ("The motivation of a witness in testifying, including her possible self-interest and any bias or prejudice against the defendant, is one of the principal subjects for cross-examination.").

It would also have been futile for counsel to move for two of the charges to be dismissed based on ADA Wright's testimony that Busby told her on January 8, 2008, that he did not believe the confidential informant was guilty of a crime. (T.T. 108). On January 10, 2008, Busby filled out a form indicating that he did not "reasonably believe[]" the confidential informant "to be the subject or target of a pending criminal investigation." (T.T. 472). Busby seems to argue that because he told the district attorney that he did not believe the informant to be guilty of a crime, he was being truthful when he indicated on the form that he did believe the confidential informant to be a target of an investigation. (Supp. Grounds 6). Extrapolating from that, it appears he believes counsel should have moved for dismissal based on lack of evidence. But Busby conflates two issues: Busby's knowledge of guilt, and Busby's knowledge of the investigation. The district attorney's testimony in no way undercuts the evidence of the latter—Busby's personal opinion of guilt had no bearing on his knowledge of an investigation, and in fact, that he was opining on guilt at all would seem to point toward knowledge of an investigation. Any motion to dismiss based on that testimony would have been meritless.

As for Busby's other claims of ineffective assistance of counsel, he cannot establish that counsel's performance "fell below an objective standard of reasonableness" of "prevailing professional norms." Strickland, 466 U.S. at 687-688. First, Busby claims that counsel

inadequately cross-examined Ronald Nir, a defense lawyer who represented the confidential

informant in a criminal trial. Busby's conviction came in part because he provided Nir with

certain confidential reports, then later reported to the FBI, the USAO, and the OIG that he had

inadvertently left the reports at Nir's office. Busby argues that counsel should have crossed Nir

on an alleged incident in which Nir spoke with an assistant U.S. attorney, then reported to a state

trial judge that the assistant U.S. attorney had agreed to dismiss a case against the confidential

informant—which was apparently not true. (Supp. Grounds 12). Per Busby, crossing on that

issue would have undermined Nir's credibility. (Supp. Grounds 12). But Busby does not

establish that counsel's decision not to cross Nir on this alleged incident was objectively

unreasonable." "Decisions whether to engage in cross-examination, and if so to what extent and

in what manner, are . . . strategic in nature" and thus afforded a presumption of reasonableness.

United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). Counsel here questioned Nir on

a prior suspension from the appointed counsel panel for overbilling (T.T. 254-256) and may have

reasonably believed the balance of his cross was better spent focused on finding inconsistencies

in Nir's account of receiving the reports, rather than delving into extrinsic matters. Busby's

argument does not overcome the "strong presumption" that defense counsel's conduct fell within

the broad spectrum of reasonable tactical decisions. Kimmelman v. Morrison, 477 U.S. 365, 381

(1986) (citing Strickland, 466 U.S. at 689).

Second, Busby does not establish that counsel was ineffective for "fail[ing] to object to

AUSA McCallum's cross examination of Mr. Busby, regarding the 17 minute telephone

conversation between Mr. Busby and ADA Wright . . ." (Supp. Grounds 6). Busby appears to be

referring to this eight-line exchange during his cross, the only point at which he was crossed

about the phone call:

Q.      You admit today that you spoke with ADA Wright before answering this question [on the FBI form]. Isn't that right?

A.      Yes.

Q.      You spoke to her for 17 minutes. Isn't that right?

A.      Yes.

Q.      You spoke to her two days before filling out this form, correct?

A.      Yes.

        . . .

Q:      You spoke to ADA Wright about an investigation of [the confidential informant]. Isn't that right?

A:      Yes.

(T.T. 471-472). Busby does not provide grounds on which his counsel should have objected to this exchange, and it does not appear to be objectionable. Even if it were objectionable and counsel's failure to object represented deficient performance, Busby could not establish the requisite prejudice. He testified far more extensively on direct as to his conversation with ADA Wright on January 8, 2008 (T.T. 413-415), making it clear that even if this portion of the cross had been objected to and excluded, there is not a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. 668, 688-694 (1984).

Third, counsel was not ineffective "in filing his motion to preclude Attorney McCullough [counsel for confidential informant's co-defendant] from testifying." (Supp. Grounds 7-9). By this, Busby seems to refer to a motion in limine filed by counsel to preclude the Government from introducing evidence of a transaction between Busby and McCullough, in which Busby criticized McCullough for allowing his client to enter a plea. (11-cr-0370, ECF No. 19). While the District Court did deny that motion, it also issued a limiting instruction precluding the Government from eliciting evidence –"such as is reported in the . . . opposition to the defendant's motion"—that Busby threatened the co-defendant through McCullough. (T.T. 5-6). While one can certainly imagine a more artfully pled motion than the one filed by counsel here,

13

it did not fall outside an objective standard of reasonableness; indeed, it was an effective piece of advocacy, as it resulted in the limiting instruction.

Fourth, Busby argues that counsel "refused to interview witnesses who had knowledge of the case, including SA Debra Lubman, SA Darren Kibel, and SA Mayda Montesdeoca, which he failed to call as witnesses for defense . . ." Busby does not identify the utility of calling any of these witnesses.[5] The "decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial," United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987), and decisions of strategy are accorded a presumption of reasonableness. Strickland, 466 U.S. at 689. "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000). Counsel's decision here is afforded this presumption of reasonableness, which Busby's generalized assertions are insufficient to overcome.

Finally, Busby argues counsel was ineffective in his failure to move to suppress the internal FBI report in which Busby denied intentionally providing Attorney Nir with any documents. (Supp. Grounds 16). Busby alleges that the report should have been suppressed for two reasons: (1) "entrapment," by which Busby seems to refer to a lack of choice he had in writing the report, as his job may have been at stake; and (2) Busby himself did not write the report in its entirety. As to the first reason, Busby is correct that "[a] statement secured under the threat of substantial economic sanction cannot be considered voluntary," and so is inadmissible under the Fourteenth Amendment. United States v. Puntigam, No. 97 Cr. 857 (BSJ), 1997 WL

---

[5] It would seem that counsel did investigate these potential witnesses at least to some degree, as both Kibel and Lubman were listed on the defense witness list (11-cr-0370, ECF No. 21), and Montesdeoca's name came up frequently during trial, including during counsel's summation. (See, e.g., T.T. 553-555, 561).

811528, at *1 (S.D.N.Y. Oct. 28, 1997) (citing Garrity v. New Jersey, 385 U.S. 493, 498-99

(1967) (police officers told they would lose jobs if they did not answer questions from state

attorney general)). However, "while a public employee may not be put to the Hobson's Choice of

self-incrimination or unemployment, he is not privileged to resort to the third alternative, i.e.,

lying." U. S. ex rel. Annunziato v. Deegan, 440 F.2d 304, 306 (2d Cir. 1971) (citing United

States v. Knox, 396 U.S. 77, 82 (1969). Where the defendant "was not prosecuted for past

criminal activity based on what he was forced to reveal about himself" but was instead

"prosecuted for the commission of a crime while testifying, i.e. perjury," the statements in

question need not be suppressed. Id. That is akin to the situation here, where Busby was charged

not for the conduct he described in the report but because he made false statements in it. Thus,

Busby's counsel cannot be found deficient in failing to move for suppression on Garrity grounds,

as such a motion would not have succeeded.

As to the second ground, a report is not inadmissible because it went through multiple

drafts or because it had multiple authors. "Rule 901(a) requires the proponent of any evidence to

submit 'evidence sufficient to support a finding that the matter in question is what its proponent

claims.' This requirement is satisfied 'if sufficient proof has been introduced so that a reasonable

juror could find in favor of authenticity or identification.'" United States v. Ruggiero, 928 F.2d

1289, 1303 (2d Cir. 1991) (citing 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 901(a)

[01], at 901–17 (1990)). "Once the court determines that the proponent of the evidence meets the

threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are

to be resolved by the fact-finder." Bazak Int'l Corp. v. Tarrant Apparel Grp., 378 F. Supp. 2d

377, 392 (S.D.N.Y. 2005) (citing Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)). That

counsel did not object to the admission of the statement into evidence cannot form the basis of an

ineffective assistance claim, as an objection would have been meritless. The Government established the document's authenticity to the satisfaction of Rule 901's low bar, establishing through Busby's supervisor that the report was the final iteration of several drafts that had been reviewed by his supervisor and a member of the FBI legal department. (T.T. 291-293). Any other outstanding issues regarding authenticity, were to be resolved by the jury and were not proper bases on which to move to exclude the statement.

## CONCLUSION

Busby has failed to make a showing sufficient to warrant a hearing on his claims. For the foregoing reasons, Busby's § 2255 motion is DENIED. Moreover, the Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated:   December 30, 2015
　　　　**New York, New York**

　　　　　　　　　　　　　　　　**ANDREW L. CARTER, JR.**
　　　　　　　　　　　　　　　　**United States District Judge**

16